UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

PENNY MONROE,

        Plaintiff,

v.                                                              Case No. 09-C-1163

MICHAEL ASTRUE,

        Defendant.

**DECISION AND ORDER**

Plaintiff Penny Monroe filed this action challenging the decision of the Commissioner of Social Security denying her disability benefits. She alleges the administrative law judge ("ALJ") erred in assessing her credibility and in failing to find that her bipolar disorder and obesity were severe impairments. She also challenges the ALJ's conclusion that Plaintiff had a residual functional capacity ("RFC") allowing her to do light work. For the reasons given below, the case will be remanded to the Commissioner.

**I. Standard of Review**

In reviewing the ALJ's decision, a federal court examines whether it is supported by substantial evidence. *O'Connor-Spinner v. Astrue,* 627 F.3d 614, 618 (7th Cir. 2010). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Skinner v. Astrue,* 478 F.3d 836, 841 (7th Cir. 2007) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). An ALJ need not specifically address every piece of evidence, but must provide a "logical bridge" between the evidence and his conclusions. *Id.* (citing *Getch v. Astrue,*

539 F.3d 473, 480 (7th Cir. 2008)). An ALJ's credibility determination is entitled to special deference because the ALJ has the opportunity to observe the claimant testifying. *Castile v. Astrue,* 617 F.3d 923, 928-29 (7th Cir. 2010). "Rather than nitpick the ALJ's opinion for inconsistencies or contradictions, we give it a commonsensical reading." *Jones v. Astrue,* 623 F.3d 1155, 1160 (7th Cir. 2010). Accordingly, credibility determinations are reversed only if they are patently wrong. *Id.*

## II. Analysis

### A. Impairments

The ALJ found that Plaintiff, who was in her mid-thirties, had the following severe impairments: status post renal nephrectomy (kidney removal), type II diabetes mellitus, asthma, status post left carpal tunnel release, transitional segment L5 with anatomical variant L5-S1, and history of a right knee meniscectomy. Plaintiff had a history of obesity (in the years preceding the hearing, she typically weighed between 220 and 250 pounds) and hypertension, which was controlled, usually, through medication. (At some times her blood pressure was within the normal range, but an occasional reading would be higher.) She also suffered from bipolar disorder, with mood swings sometimes lasting days. She traced these swings to her twenties. Her mental health records indicate she had been sexually assaulted by family members as a teenager and suffered from post-traumatic stress disorder as well.

Plaintiff argues that the ALJ erred in failing to consider her obesity and bipolar disorder to be severe impairments. Had the ALJ considered these impairments to be severe, she would have included them as limitations in the hypothetical question she asked the vocational expert. The obesity argument is a non-starter. The ALJ cited the opinion of Dr. Khorshidi, a state agency

2

consultant, who noted Plaintiff's obesity. (Tr. 12.) Dr. Khorshidi concluded that Plaintiff could do *medium* work – lifting 50 pounds occasionally and 25 frequently. (Tr. 300-305.) Dr. Khorshidi imposed no significant limitations on Plaintiff's physical abilities except for a directive to avoid exposure to fumes, odors, dust, etc. (due to asthma) and a limitation on left hand finger manipulation (due to hand injury). Nowhere in the record is any medical evidence suggesting that Plaintiff's obesity materially impacted her ability to work. The ALJ did not engage in a lengthy discussion of why she did not consider obesity, but the ALJ did recognize that Plaintiff was obese, as found by Dr. Khorshidi, and the ALJ noted that the medical record was "mild," with no serious limitations ever imposed by Plaintiff's doctors. Accordingly, the ALJ was correct not to include obesity as a severe impairment.

The question of bipolar disorder is more problematic, however. Plaintiff saw Yong Li, M.D., a psychiatrist, and described mood swings, "highs and lows, episodes of not sleeping much, has high energy, can go 4-5 days, then crashes into depression." (Tr. 351.) Dr. Yong described her affect as "Dysphoric, restricted." (*Id.*) She was prescribed Lamictal for bipolar disorder and Lorazepam for anxiety. Dr. Yong described Plaintiff's anxiety, depression, nightmares, and her history of sexual abuse; he diagnosed her with bipolar disorder. (Tr. 352.)

The ALJ did not consider Plaintiff's bipolar disorder, however, because "claimant was diagnosed with a severe mental impairment despite a complete lack of objective findings." (Tr. 12.) The government supports this conclusion by noting that the applicable regulations also require objective medical data before a finding of disability may be reached. It is unclear, however, what "objective findings" would exist for a diagnosis of bipolar disorder. It cannot be diagnosed through a blood test or an MRI. It is a mental illness experienced primarily subjectively by the claimant but

3

is also observable by others. (Plaintiff's husband testified that she screamed at people – at him, her sisters, anyone – four or five times per day. (Tr. 33.)) Under the government's theory, bipolar disorder – or any mental illness – would never be disabling because it cannot be "objectively" tested. That, of course, is not true. "Depression, diagnosed by a medical professional, is objective medical evidence . . . to the same extent as an X-ray film." *Ramey v. Astrue,* 319 Fed. Appx. 426, 429, 2009 WL 899779, *3 (7th Cir. 2009) (quoting *Cox v. Apfel,* 160 F.3d 1203, 1208 (8th Cir. 1998)). That is, a diagnosis by a psychiatrist like Dr. Yong *is* the objective evidence of mental illness; to discount that diagnosis because it is based on self-reported symptoms is to discount the illness itself.

The government responds that even if the ALJ was wrong to discount Plaintiff's mental illness, the ALJ nevertheless accounted for Plaintiff's psychological factors in the RFC. Specifically, the ALJ limited the Plaintiff to unskilled work that had no contact with the general public. Although this limitation might account for Plaintiff's tendency to yell at people during her manic phases, it does not address the anxiety or depressive phases that Plaintiff experienced. Plaintiff testified that she had "ups and downs" and had to stop working on a number of occasions. "For a while there, I was taking off work, and they said that I was taking off too much. And a lot of that has to do [with] why I was in and out of jobs." (Tr. 25.) Because the opinion of Dr. Yong was dismissed, a full exploration of the limits imposed by Plaintiff's bipolar disorder was not undertaken.

Plaintiff also challenges the ALJ's determination that she was less than credible. The ALJ's credibility determinations are entitled special deference, *Sims v. Barnhart*, 442 F.3d 536, 538 (7th Cir.2006) ("Credibility determinations can rarely be disturbed by a reviewing court, lacking as it

4

does the opportunity to observe the claimant testifying.") Even so, the ALJ is still required to "build an accurate and logical bridge between the evidence and the result . . . ." *Shramek v. Apfel*, 226 F.3d 809, 811 (7th Cir. 2000) (internal quotation marks omitted).

The ALJ concluded that Plaintiff's testimony "was not credible to the extent she alleged an inability to perform any work. It was not supported by the medical evidence of record or the functional capacity assessments by the treating and consulting physicians."[1] (Tr. 13.) Although the ALJ's discussion of credibility was not extensive, it was similar to the finding in *Castile v. Astrue*, where the ALJ found that "based on the objective medical and other evidence of record, I do not find [Castile's] allegation of pain and other symptoms entirely credible to the point that they would prevent competitive work." 617 F.3d 923, 929 (7th Cir. 2010). The ALJ's credibility finding is also implicit in her discussion of the record. For example, she noted that two physicians had found, in the RFC form, that Plaintiff had no significant physical limitations. She could lift 25 pounds frequently and sit for 6 hours in an 8-hour day, for example. (Tr. 300.) (The government argues that the ALJ was kind in limiting Plaintiff to light work when the record suggested she could perform even medium work.) The ALJ also noted that, although Plaintiff had frequently complained of pain, there were no significant physical limitations found anywhere in the record.

Plaintiff cites a laundry list of evidence in the record describing her attempts to obtain treatment for her back problems and pain, but nowhere in that record is any physician's note limiting her ability to work or any diagnosis suggesting that her back pain was so acute that it would

---

[1]The ALJ also found that Plaintiff exaggerated her asthma symptoms: "She testified she goes to the emergency room frequently with asthma exacerbations, but she then acknowledged she had not been admitted to the hospital during the past year." (*Id.*) This appears to be a mischaracterization of the Plaintiff's testimony, but it is not enough on its own to warrant reversal.

5

be considered disabling. The ALJ was not saying that Plaintiff experienced no pain, but merely that the state agency physicians had concluded she could work and there was no medical evidence to the contrary. If Plaintiff had a treating physician's opinion that she was unable to work, it would be a different story. In that case, it would be incumbent on the ALJ to reconcile that opinion with the other medical opinions that found Plaintiff could work. But to the extent the credibility determination was based on Plaintiff's physical symptoms, it is supported by the record.[2] *Eichstadt v. Astrue*, 534 F.3d 663, 668 (7th Cir. 2008) (ALJ's credibility determination overturned only if they are "patently wrong.")

In sum, the case is **REMANDED** to the Commissioner to allow the ALJ to address Plaintiff's mental health issues and, if necessary, incorporate any resulting limitations into an RFC assessment.

**SO ORDERED** this __8th__ day of March, 2011.

                                       s/ William C. Griesbach
                                       William C. Griesbach
                                       United States District Judge

---

[2] As noted above, the ALJ improperly discounted Plaintiff's bipolar disorder diagnosis. There is nothing in the ALJ's opinion, however, to suggest that the bipolar disorder issue was material to the ALJ's credibility determination.